JOOSTEN, Appellant, v. ROBINSON, Respondent.

*November 30, 1959—January 5, 1960.*

2

For the appellant there was a brief by *Godfrey, Godfrey & Neshek* of Elkhorn, and oral argument by *Alfred L. Godfrey* and *Thomas G. Godfrey*.

For the respondent there was a brief by *Kenney, Korf & Pfeil* of Elkhorn, and oral argument by *Francis J. Korf*.

BROADFOOT, J. By her complaint and in the affidavits in opposition to the motion for summary judgment the plaintiff asserts that the accident happened at Lake Geneva in Walworth county, Wisconsin; plaintiff sustained a fractured skull and was rendered unconscious; she was taken by ambulance to Lakeland Hospital at Elkhorn, where she was attended by a Lake Geneva physician, who is now deceased; he was not their family physician but was summoned by someone at the time of the accident; the physician made a written report on June 4, 1952, indicating that plaintiff's total disability would last for one month, followed by partial disability for two weeks, ending July 15, 1952; this report was erroneous in that plaintiff suffered headaches thereafter and in February, 1957, had a convulsion; she sought further medical treatment and subsequently had brain surgery which showed that there had been brain damage as a result of the accident; the doctor who performed the operation advised her to see an attorney and the action was started soon thereafter; the report being erroneous, the settlement was based upon a mutual mistake of fact; a short time after the accident the defendant saw the plaintiff and asked her not to talk about the accident with any person except that an insurance man from his company would come to see her shortly; that she should talk with the insurance man and sign such papers as he wanted signed, and then the insurance man would settle with her; thereafter one John R. Burke came to plaintiff's home and told plaintiff and her mother that he represented the defendant's insurance company; they

trusted Burke because the defendant said they could; they told Burke the things defendant told her to tell him and she and her mother signed the papers which Burke asked them to sign, just as defendant told her to do; plaintiff was then sixteen years of age; her parents had little education or business experience and none of them had had any experience with personal-injury claims; none of them had ever employed a lawyer and they had no experience to guide them in fixing the value of plaintiff's claim; Burke told plaintiff's mother she should not talk to anyone else; he knew what the claim was worth and it was worth $477.50 and no more; Burke's conduct and statements were fraudulent in that he knew or should have known that her claim was worth several times the value he placed upon it; Burke did not disclose to the plaintiff or her mother the factual data which he had in his possession with respect to the nature, extent, and probable effect upon the plaintiff as to her injuries and that he told plaintiff and her mother they did not need to talk with anyone else with respect to the claim and its value; the plaintiff and her parents were residents of McHenry county, Illinois; Burke further defrauded plaintiff in that he employed an attorney to draft a petition for guardianship and all other documents relating to the settlement, and this attorney was paid by the insurance company; the attorney's interests were adverse to those of the plaintiff; Burke did not read the petition and other documents, including the release which he asked plaintiff and her mother to sign, to them and did not explain the nature or effect thereof; plaintiff and her mother relied upon the statements Burke made and she and her parents were thereby lulled into taking no steps to protect her rights legally by serving a notice of injury.

Plaintiff further asserts that fraud was practiced upon the court in Illinois by not making a full disclosure to the court with respect to the known injuries sustained by the plaintiff and the extent of her disability by incorporating in

the petition a statement that petitioner, the plaintiff's mother, had sought legal advice with respect to the proposed settlement and had been advised by legal counsel and was of the opinion that the offer was just, fair, and reasonable.

It is further asserted that it was fraud upon the Illinois court to have an attorney adverse in interest to the plaintiff and her mother appear in court on her behalf.

The trial court in his memorandum decision stated that a fact issue was presented by the pleadings and affidavits on the question of whether the settlement and release were induced by fraud, and indicated that if that were the only question involved the motion for summary judgment would have been denied. However, the trial court decided the motion on the undisputed fact that no notice of injury was served on the defendant as required by statute.

The plaintiff contends that the trial court was in error in holding that no issue was raised by the record with respect to whether or not the defendant's fraud induced the plaintiff's failure to serve her two-year notice of injury or to commence her action within the two-year period next following her injury. Based upon the asserted fraud it is contended that the defendant is estopped from asserting that any statute in force and effect at the time of the injury or at the time of the settlement bars the plaintiff from bringing this action.

The trial court reviewed the cases dealing with personal injuries in which this court has held that the defendant has been estopped by his conduct from taking advantage of the plaintiff's failure to comply with the statute in respect to proper service of notice of injury within two years. He then determined that our decision in the case of *Gerke v. Johnson,* 258 Wis. 583, 46 N. W. (2d) 829, is controlling. The following is an excerpt from the statement of facts therein (p. 584) :

"The complaint first sets forth a conventional cause of action to recover damages for personal injuries. It then

alleges that two months after the accident the insurance company's representative called upon the plaintiff, sympathized with him, minimized his injuries, predicted complete recovery, disclaimed liability on the part of all defendants, said that plaintiff would not benefit by taking legal advice, and announced the insurance company's wish to make a contribution of $2,750 which, if plaintiff accepted it, would not impair any claim which he might have against the defendants. The plaintiff then took the money and signed a paper which he now believes was a general release of his cause of action. He further pleads that all of the agent's representations were false to the agent's knowledge, were made with the intent that plaintiff would believe them and to induce him to act upon them. Plaintiff did believe them and in such belief signed the paper, which he would not have done if he had known that any of the representations so relied on were not true."

In that case a demurrer to the complaint was sustained because the same did not allege the giving of the two-year notice. The action was commenced more than two years after the date of the injury. In commenting upon the *Gerke Case, supra,* the trial court said:

"It seems to me that this instant case must be controlled by *Gerke v. Johnson, supra.* We cannot say that the plaintiff and her parents failed to give notice because of any representation by the adjuster. It would appear that no notice was given because a settlement had been made which was satisfactory to the plaintiff and her parents until the time that the brain damage was diagnosed. For this trial court to say that the false representations of the adjuster in inducing a settlement led the plaintiff to believe the defendant would not rely upon the statute is to overlook the theory of all of the cases I have cited and in particular the case of *Gerke v. Johnson* and this the trial court has no right to do."

In the *Gerke Case* we inadvertently referred to the two-year-notice statute in personal-injury cases as a "statute of limitations." It should have been referred to as a "condition

precedent." In all other respects we confirm what was said in that case, and the trial court was correct in applying the rule therein stated to the facts in the present case.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.