**2020 WI App 26**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2019AP130

†Petition for Review filed

Complete Title of Case:


SOUTHPORT COMMONS, LLC,

PLAINTIFF-APPELLANT,†

V.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

DEFENDANT-RESPONDENT.


| | |
|---|---|
| Opinion Filed: | April 15, 2020 |
| Submitted on Briefs: | November 26, 2019 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Gundrum and Davis, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Smitha Chintamaneni* of *von Briesen & Roper, S.C.*, Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Jennifer L. Vandermeuse*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

April 15, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP130**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV345**

**IN COURT OF APPEALS**

---

SOUTHPORT COMMONS, LLC,

   PLAINTIFF-APPELLANT,

V.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Kenosha County: DAVID M. BASTIANELLI, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

¶1     GUNDRUM, J.   Southport Commons, LLC appeals the circuit court's order granting the Wisconsin Department of Transportation's motion for judgment on the pleadings.  Southport contends the court erred in ruling that its action is barred because it filed its claim for inverse condemnation more than three years after the

damage at issue occurred to its property. Southport argues that statutory language indicating its claim against DOT needed to be filed "within 3 years after the alleged damage *occurred*," WIS. STAT. § 88.87(2)(c) (2017-18)[1] (emphasis added), really means the claim needed to be filed within three years after the alleged damage was *discovered*. Because we conclude the statute means what it says, we affirm.

## *Background*

¶2      According to the allegations in Southport's complaint, Southport owns approximately forty-five acres "in a prime location for commercial development" near Interstate 94 in Kenosha County. During approximately 2008 through 2009, DOT relocated an I-94 frontage road so as to bisect Southport's property with this new road. In July 2016, Southport received a survey and wetland delineation of its property, which, when compared to a similar 2007 survey and delineation, "identifie[d] a significant increase in the size and amount of wetlands on the Property, resulting from DOT's Construction Project." Prior to receiving the 2016 survey and delineation, Southport "had no knowledge of the [wetland increase] and the resulting significant damage caused to the Property." In March 2017, Southport filed a notice of claim against DOT, which DOT effectively denied. Southport subsequently filed this lawsuit, claiming inverse condemnation and seeking just compensation.

¶3      DOT moved for judgment on the pleadings on the basis that Southport filed its notice of claim more than three years after the damage occurred and thus its action was barred by WIS. STAT. § 88.87(2)(c), which provides that a property owner may file such a claim "within 3 years after the alleged damage occurred."

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Southport countered that the three-year period had not run because, based upon our decision in *Pruim v. Town of Ashford*, 168 Wis. 2d 114, 483 N.W.2d 242 (Ct. App. 1992), the period did not begin to run until Southport discovered the damage, which was when it received the 2016 survey and delineation. The circuit court granted DOT's motion, concluding that *Pruim* did not control, the damage to Southport occurred at the latest in 2009, under § 88.87(2)(c) Southport had three years to file its claim, and Southport did not file its claim until March 2017. Southport appeals.

### Discussion

¶4      WISCONSIN STAT. § 88.87(2)(c) provides in relevant part: "If … [DOT] constructs and maintains a highway … not in accordance with par. (a), any property owner damaged by the highway … may, *within 3 years after the alleged damage occurred*, file a claim with the appropriate governmental agency." (Emphasis added.) On appeal, Southport again argues that the requirement that a claim be filed within three years after the alleged damage "occurred" really means, based upon *Pruim*, that the claim must be filed within three years after the alleged damage is "discovered." *Pruim* does not control this case, and we reject Southport's strained reading of this statute.

¶5      Southport's challenge calls upon us to interpret and apply WIS. STAT. § 88.87(2)(c). Interpretation and application of a statute are matters of law we review de novo. *State v. Simmelink*, 2014 WI App 102, ¶5, 357 Wis. 2d 430, 855 N.W.2d 437; *Showers Appraisals, LLC v. Musson Bros.*, 2013 WI 79, ¶21, 350 Wis. 2d 509, 835 N.W.2d 226.

¶6      We begin, as we must, with the language of the statute. WISCONSIN STAT. § 88.87(2)(c) unambiguously provides that the three-year limitation period begins to run when the alleged damage "occurred." In this case, the circuit court

concluded that that date was when the damage took place in 2009 (at the latest), and Southport does not challenge that factual determination on appeal. Instead, Southport contends, as a legal matter, that its *discovery* of the damage is when the limitations period begins. We disagree.

¶7 Damage "occurs" when it happens or takes place. *See Occur*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993) ("occur" means "to present itself : come to pass : take place : HAPPEN"); *see also **Kremers-Urban Co. v. American Emp'rs Ins. Co***, 119 Wis. 2d 722, 741, 351 N.W.2d 156 (1984) ("The ordinary and common meaning of 'occurrence' is 'something that takes place; something that happens unexpectedly and without design.'").[2] On the other hand, as relevant to the context of this case, "discover" means "to obtain for the first time sight or knowledge of" (e.g., "[discover]ed a large bay that now bears his name" or "[discover]ed the circulation of the blood") and "to detect the presence of: FIND, DISCERN" (e.g., "[discover]ed arsenic in the patient's sleeping potion"). *See Discover*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993) (emphasis omitted). When a thing occurs and when that thing is discovered are two distinct concepts. Damage may occur without anyone discovering it, but damage cannot be

---

[2] In its reply brief, Southport cites to ***State v. Anderson***, 2005 WI 54, 280 Wis. 2d 104, 695 N.W.2d 731, in claiming "[t]he ordinary definition of 'occur' is 'to take place, come about' or '*to be found to exist* or appear." ***Id.***, ¶36 (citing *Occur*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. 1992)). Southport then adds: "Thus, the statutory language requires that the claim be filed within three years after the alleged damage was 'found to exist' or was discovered."

***Anderson*** does not aid Southport; in fact, it undermines Southport's argument. The question before the court in ***Anderson*** was whether the mens rea element of the crime in that case had "take[n] place" within the state. ***Anderson***, 280 Wis. 2d 104, ¶32. While it is true the ***Anderson*** court stated that "[t]he dictionary definition of 'occur' is '[t]o take place, come about' or '[t]o be found to exist or appear," there was no issue in that case related to when the mens rea element was discovered, and the court in no way treats the *occurrence* of the mens rea element as meaning the *discovery* of that element. Instead, the court treats "occurs" as being synonymous with "takes place" throughout its decision. *See id.*, ¶¶36, 46, 47, 50. Likewise, for the reasons stated herein it is clear to us that the statute uses "occur" as meaning "take place."

discovered without it having occurred and someone making the discovery. While the occurrence of a thing, such as damage, and the discovery of that thing can happen simultaneously, often that is not the case, as in the situation now before us.

¶8    In selecting when damage occurs as the trigger for the three-year-limitation period of WIS. STAT. § 88.87(2)(c), the legislature chose to not make the trigger dependent upon someone's discovery of the damage. Based upon Southport's position, it could have waited fifty years after the completion of DOT's road project to conduct its post construction survey and delineation and then it still would have had another three years to file its claim. The plain language the legislature chose—"occurred"—indicates the legislature did not intend such an open-ended time period for filing a claim.[3]

¶9    When the legislature intends to have a statutory limitation period begin to run when damage is discovered, as opposed to when it occurs, the legislature has no problem explicitly stating so. *See*, e.g., WIS. STAT. § 893.55(1m) (requiring commencement of an action against a health care provider "within the later of: (a) Three years from the date of the injury, or (b) One year *from the date*

---

[3] Although the unambiguous meaning of "occurred" in WIS. STAT. § 88.87(2)(c) needs no additional support, a review of § 88.87(2)(d), the paragraph immediately following § 88.87(2)(c), nonetheless provides it. Paragraph (d) provides:

> Failure to give the requisite notice by filing a claim under par. (c) does not bar action on the claim *if* the … [DOT] had *actual notice of the claim within 3 years after the alleged damage occurred* and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the … [DOT].

Sec. 88.87(2)(d) (emphasis added). We again see the language "within 3 years after the alleged damage occurred." We find it very unlikely the legislature would use this language allowing for an action to advance where DOT had "actual notice of the claim within 3 years after the alleged damage occurred" if the legislature had intended an open-ended "discovery-of-the-damage-by-the-property-owner" rule when it wrote "within 3 years after the alleged damage occurred" in para. (c). *See* § 88.87(2)(c), (d).

*the injury was discovered or, in the exercise of reasonable diligence should have been discovered*," but not later than five years following the act or omission (emphasis added)); WIS. STAT. § 893.51(2) ("An action under [WIS. STAT. §] 134.90 shall be commenced within 3 years after the misappropriation of a trade secret is *discovered or should have been discovered* by the exercise of reasonable diligence."); *see also* WIS. STAT. §§ 402.725(2), 411.506(2), 893.80(1p). But here the legislature chose the term "occurred" and not "discovered."

¶10    Since the plain language of the statute does not support Southport's position, it understandably tries to focus our attention on a statement we made in *Pruim* that the then ninety-day time period to file a claim under this statute begins "when the damage is first *discovered*." *See Pruim*, 168 Wis. 2d at 123 (emphasis added). Because the issue and circumstances before us in *Pruim* were significantly different from those before us now, our decision in *Pruim* does not control our decision in this case.

¶11    In *Pruim*, a heavy rainstorm on March 13, 1990, caused damage to a culvert and road shoulder next to property owned by Pruim. *Id.* at 117. Pruim discovered damage to his own property, which he claimed was caused by the negligent construction and maintenance of the culvert and shoulder, "right after" the storm but did not file a notice of claim with the Town until August 7, 1990. *Id.* at 117, 122. Pruim eventually filed suit, alleging that the Town's negligent construction and maintenance of the culvert and shoulder "continue[d] to cause erosion to his property, had caused the creation of a channel of water, and had caused the creation of a pond of water at the base of the culvert." *Id.* at 117. Pruim claimed this was a continuing nuisance "involv[ing] a series of continuing events, i.e., various rainstorms that caused continuing damage to his property," and he

sought to recover costs for hiring a private contractor to make the needed repairs. *Id.* at 119, 122.

¶12    The town sought summary judgment on the basis that Pruim's notice of claim was untimely due to being filed more than ninety days after the March 13 storm caused damage to his property. *Id.* at 118. In addressing the matter on appeal, we appeared to initially read language into WIS. STAT. § 88.87(2)(c) (1991-92) that the legislature did not choose to incorporate as we stated—"[t]he notice of claim must be made within ninety days after the damage occurred *and is discovered*." *Pruim*, 168 Wis. 2d at 119 (emphasis added). Reading *Pruim* more closely, it appears less as if we were actually attempting to add the additional "and is discovered" language to para. (c) and more as if we were treating the terms "discovered" and "occurred" as interchangeable based on the particular facts of the case.[4]  *See*, e.g., *id.* at 122 ("[I]t is undisputed that Pruim *discovered* the damage right after the heavy rainstorm …. Pruim responds that this was not a static, one-time *occurrence*." (emphasis added)). We then used "discovered" for much of the decision instead of the word actually chosen by the legislature, "occurred." *See id.* at 119, 122-23. It appears we felt comfortable using "occurred" and "discovered" interchangeably because the damage was discovered contemporaneously with when it occurred, as we noted that it was "undisputed that Pruim discovered the damage right after the heavy rainstorm of March 13, 1990," and thus "the town claim[ed] that he had ninety days from that date [i.e., the date the damage also "occurred"] to file the notice of claim." *Id.* at 122.

---

    [4] Had we meant for "occurred" and "discovered" to have two distinct meanings, like in the case now before us, it would have been unnecessary for us to say "occurred" at all in the phrase "after the damage occurred and is discovered," *Pruim v. Town of Ashford*, 168 Wis. 2d 114, 119, 483 N.W.2d 242 (Ct. App. 1992), because if damage is discovered it quite obviously has already occurred.

¶13     The focus of our decision in *Pruim* was not whether the notice of claim time period begins to run when damage occurs as opposed to when it is discovered—indeed there would have been no point in addressing this question as the occurrence and discovery were contemporaneous.  The question before us was whether WIS. STAT. § 88.87(2)(c) (1991-92) "contemplate[d] allowing a new cause of action each day the damage continues" or if the then ninety-day limitation period required the property owner to file a claim within ninety days of the date the damage first occurred, March 13, 1990.  *Pruim*, 168 Wis. 2d at 122-23.  We concluded the latter.  *Id.* at 123.  As the State points out, "Because the discovery and occurrence happened at the same time [in *Pruim*], the *Pruim* court did not decide what the appropriate deadline would be when discovery occurred after the occurrence."  Because *Pruim* did not address a question similar to that at issue in this case— whether, in a situation where damage is discovered long after it occurs, the notice of claim time limit begins to run when the damage occurs or when it is discovered[5]—we conclude that *Pruim*'s treatment of the word "discovered" as interchangeable with "occurred" is not appropriate for this case.

¶14     Southport also suggests the legislature must have agreed with our *Pruim* decision referring to "occurred" as "discovered" because approximately a year after we issued the decision, the legislature modified WIS. STAT. § 88.87(2)(c) to change the ninety-day period for filing a claim to three years yet did nothing to directly undermine our use of the term "discovered" in place of "occurred."  We disagree for two reasons.  First, if the legislature was aware of *Pruim*, it would also have been aware that the damage in that case occurred and was discovered on the

---

[5] The *Pruim* decision, for example, provides us with no reason to believe that had Pruim been absent from his home during and for the month following the March 13 storm and related property damage that we would have concluded that the limitation period did not begin to run until Pruim returned home and discovered the damage.

same date, so our interchangeable use of "occurred" and "discovered" would not have alerted it to a need to modify language in the statute to address a situation like that now before us, where damage was discovered long after it occurred. Second, the legislative history of § 88.87(2)(c) and our reading of it in ***Lins v. Blau***, 220 Wis. 2d 855, 861, 584 N.W.2d 183 (Ct. App. 1998), are directly contrary to Southport's speculation as to the legislature's intent.[6]

¶15    In ***Blau***, we determined that "[t]he legislature made [the change from 90 days for filing a claim to three years] with the intent to provide the landowner with '*sufficient time* to *discover* the damage.'" ***Id.*** (citing LEGISLATIVE COUNCIL SPECIAL COMMITTEE NOTE related to 1993 Wis. Act 456, § 109 (emphasis added)). This determination appears well-founded as the committee note we referred to in ***Blau*** states in larger part:

> The [Legislative Council's Special Committee on Drainage District Laws] concluded that, if construction occurs in the winter or in a dry season, the property owner may have no way to learn of the damage until after the 90-day period has passed. Therefore, the bill changes the statute to provide a 3-year period for filing a claim, instead of a 90-day period, *to allow the property owner sufficient time to discover the damage*.

LEGISLATIVE COUNCIL SPECIAL COMMITTEE NOTE related to 1993 Wis. Act 456, § 109 (emphasis added).

---

[6] Because the plain language of WIS. STAT. § 88.87(2)(c) is unambiguous, we need not resort to legislative history to illuminate the meaning of para. (c). That said, "legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." ***State ex rel. Kalal v. Circuit Court for Dane Cty.***, 2004 WI 58, ¶51, 271 Wis. 2d 633, 681 N.W.2d 110. In this case, we refer to legislative history not only to provide confirmation of our plain language reading, but also to respond to Southport's erroneous speculation as to the legislature's intent in revising this statute in 1994.

¶16    The legislative history and our reading of it in *Blau* support our plain language interpretation that with the 1994 statutory change, the legislature intended that a property owner's right to file a claim be extended from ninety days to three years after damage occurred but at three years be extinguished.  The legislature took a lag in discovery into account in providing an additional two years and nine months for a property owner to discover damage and file a related claim.   Thus, the legislature fully intended what it said—that the limitation period would run three years from when the damage occurred—because that extension from ninety days to three years would "allow the property owner sufficient time to discover the damage."  *See Blau*, 220 Wis. 2d at 861 (citing LEGISLATIVE COUNCIL SPECIAL COMMITTEE NOTE related to 1993 Wis. Act 456, § 109).  The legislature did not intend an open-ended time period that begins to accrue upon some later "discovery" of damage by a property owner.  And as we stated in *Blau*, WIS. STAT. § 88.87(2)(c) "sets forth the *time period* in which notice must be given for the claimant to preserve his or her right to proceed." *Blau*, 220 Wis. 2d at 868 (emphasis added).  That "time period" is three years from the when the damage occurred, as the statute says, not three years from when it was discovered.

*By the Court.*—Order affirmed.